849 So.2d 1222 (2003)
David RAY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-3067.
District Court of Appeal of Florida, Fourth District.
July 30, 2003.
*1223 Carey Haughwout, Public Defender, and Louis G. Carres, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING OR CLARIFICATION
STEVENSON, J.
On motion for rehearing or clarification, we withdraw our prior opinion and issue the following in its place.
*1224 The appellant, David Ray, was stopped for riding his bicycle at night without the proper lights. Subsequently, based on Ray's fidgety behavior, the deputy performed a weapons pat-down and retrieved crack cocaine rocks from Ray's pocket. Ray pled no contest to a charge of possession of cocaine, reserving his right to appeal the trial court's denial of his motion to suppress. Because the circumstances did not support a reasonable suspicion that Ray was carrying a weapon, we reverse.
The only witness to testify at the suppression hearing was Deputy Perry, an eleven-year law enforcement veteran. Perry stated that he was patrolling an area known for its illegal drug activity and stopped Ray for riding a bicycle at night without proper illumination. By the time the deputy got to Ray, he had stopped and was straddling the bike, talking to several individuals in a car. The deputy described Ray's movements as "furtive," explaining that "[h]e put his body between myself and him" and "[h]e wouldn't stay open." Additionally, the deputy stated that despite several requests, Ray did not want to remove his hands from his jacket pocket. Ray's initial response to the deputy was "why are you bothering me?" The deputy then came around the car, stood directly behind Ray and asked Ray to put his hands on his head. According to Perry, Ray's reluctance to remove and keep his hands away from his pockets coupled with the deputy's knowledge of the link between drugs and weapons made him concerned for his safety.
Although the deputy testified that he did not observe any bulges in Ray's clothing, after having Ray place his hands on his head, the deputy inquired whether Ray had a weapon. When Ray said "no," the deputy asked for Ray's permission to pat him down. According to the deputy, Ray consented. While conducting the pat-down, the deputy felt a plastic baggie in Ray's front, left pocket. The deputy expressly denied that he manipulated the bag in any way and testified that, based on his experience and training, he knew that such bags were used for drug packaging. The deputy removed the item and found crack cocaine rocks. On these facts, the trial court denied Ray's motion to suppress, finding that Ray's nervous behavior supported the weapons pat-down. The trial court's determination that the facts were sufficient to give the deputy reasonable suspicion to believe Ray was armed is reviewed de novo on appeal. See Pagan v. State, 830 So.2d 792, 806 (Fla.2002)(citing Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), and Connor v. State, 803 So.2d 598 (Fla.2001), cert. denied, 535 U.S. 1103, 122 S.Ct. 2308, 152 L.Ed.2d 1063 (2002)), cert. denied, ___ U.S. ___, 123 S.Ct. 2278, 156 L.Ed.2d 137 (2003).
There is no question that the stop itself was valid. See, e.g., State v. Wilson, 725 So.2d 1143 (Fla. 2d DCA 1998). Since the stop was valid, the question becomes whether the deputy's weapons pat-down was permissible. Following a stop, "police officers are authorized to execute a pat-down for weapons only where they have a reasonable suspicion to believe that a suspect is armed with a dangerous weapon." Campuzano v. State, 771 So.2d 1238, 1243 (Fla. 4th DCA 2000); see also § 901.151(5), Fla. Stat. (2002); Johnson v. State, 785 So.2d 1224, 1226 (Fla. 4th DCA 2001)(stating that "a [weapons] pat down is authorized when ... the officer has probable cause to believe that the person stopped is armed with a dangerous weapon").[1] Such a pat-down will *1225 be justified where "a reasonably prudent officer, under the circumstances which exist at the time of the stop, would be warranted in the belief that his safety, or the safety of others, was in danger." L.D. v. State, 770 So.2d 164, 165 (Fla. 4th DCA 2000).
One of the recognized circumstances justifying a weapons pat-down is the combination of the defendant's nervousness and the officer's observation of a bulge in the defendant's clothing. See, e.g., Richardson v. State, 599 So.2d 703 (Fla. 1st DCA 1992); Graham v. State, 495 So.2d 852 (Fla. 4th DCA 1986). Here, Perry expressly acknowledged that he did not observe any bulges in Ray's clothing. As for the deputy's "knowledge" of the link between drugs and weapons, here, there was nothing linking Ray to drugs, or to any other potential criminal activity for that matter. Perry stopped Ray simply to discuss Ray's failure to have the proper lighting on his bicycle. Consequently, we are left with the deputy's testimony that Ray was reluctant to remove his hands from his pockets. We conclude that the circumstances presented in the instant case are insufficient to establish a reasonable suspicion that Ray was armed with a dangerous weapon.
This case is similar to several others where, following a non-criminal traffic stop, the defendant appeared nervous and kept his hands in or near his pockets. In E.H. v. State, 593 So.2d 243 (Fla. 5th DCA 1991), the court held that an officer's pat-down search pursuant to a traffic stop lacked "probable cause" where the defendant kept reaching into his pocket but the officer noticed no bulge in the defendant's clothing that would indicate that he was carrying a weapon and there was no indication or suspicion that the defendant had been engaged in criminal activity at the time of the stop. Similarly, in Coleman v. State, 723 So.2d 387 (Fla. 2d DCA 1999), another traffic stop case, the court held that defendant's nervousness and the fact that he was holding his hand over his pants pocket was not sufficient to justify a weapons pat-down. The court in Coleman noted that the officer acknowledged that he did not see any bulges in the defendant's clothing and the officer had not observed any criminal activity afoot. See id. at 388.
Additionally, the State would have us uphold the weapons pat-down on the ground that Ray consented. While the trial court never reached this issue, on these facts, it cannot be said that Ray's "consent" was anything other than acquiescence to a show of police authority. The deputy stopped the defendant, in the dark, ordered him to remove his hands from his pockets, approached him from behind, and then ordered him to place his hands on his head. It was only after ordering Ray to place his hands on his head that the deputy asked for "permission" to search Ray. As the court stated in State v. Iaccarino, 767 So.2d 470, 476 (Fla. 2d DCA 2000):
When the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority.
Lastly, even had the pat-down been proper, the testimony in the instant record was woefully inadequate to allow the officer *1226 to be able to legally retrieve the item from Ray's pocket based on the "plain feel" doctrine. See Doctor v. State, 596 So.2d 442 (Fla.1992). The testimony in this regard on direct examination was as follows:
Q. [State] You patted him down and you said you felt what?
A. [Officer Perry] I felt a plastic bagg[ie] in the front left pocket.
Q. Did you manipulate it in any way?
A. No, I did not.
Q. Based on your training and experience what did you believe this plastic substance to be?
A. Based upon my training and experience I know it's often used for packaging, selling, and distribution of narcotics.
Q. What did you do as a result of feeling that?
A. I removed plastic baggies containing several pieces of rock cocaine.
Perry did not testify that he felt anything unique about the package in Ray's pocket which would indicate that narcotics were contained within it. Officer Perry's testimony merely established that he felt a plastic baggie and believed that it contained narcotics because narcotics are frequently packaged in plastic baggies. In order to justify a seizure based on the plain feel doctrine, at a minimum, the officer must testify that, based on his experience, the item's contour or mass makes its identity as contraband immediately apparent. See Jordan v. State, 664 So.2d 272 (Fla. 5th DCA 1995). The State failed to establish that Perry had probable cause to remove the plastic baggie from Ray's pocket.
Consequently, the trial court erred in denying Ray's motion to suppress. As the ruling on the motion was dispositive of the possession charge, we remand with instructions that Ray be discharged.
REVERSED and REMANDED.
WARNER, J., concurs.
STONE, J., concurs specially with opinion.
STONE, J., concurring specially.
I do not agree with the majority that the officer, on these facts, could not conduct the initial pat down for weapons out of concern for safety. Nevertheless, I concur in reversing based on the unlawful seizure of the item from Ray's pocket.
NOTES
[1] While the term "probable cause" is employed in the statute and in much of the case law addressing the circumstances required to support a weapons pat-down, our supreme court has held that, in this context, the term "probable cause" is "not utilized in the same sense that the term is used when referring to arrests or search warrants." State v. Webb, 398 So.2d 820, 824 (Fla.1981).