979 So.2d 991 (2008)
STATE of Florida, Appellant,
v.
Howard BARNES, Appellee.
No. 4D06-3784.
District Court of Appeal of Florida, Fourth District.
February 13, 2008.
*992 Bill McCollum, Attorney General, Tallahassee, and Diane F. Medley, Assistant Attorney General, West Palm Beach, for appellant.
Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellee.
PER CURIAM.
Appellant, the State of Florida, timely appeals the trial court's order granting the defendant's motion to suppress all evidence obtained as a result of a pat-down frisk of the defendant.
As background, an officer stopped the appellee, Howard Barnes, for riding a bicycle at night without a light as required by law. When the officer approached Barnes, Barnes was "acting real nervous, jittery and everything." The officer asked Barnes why he did not have a light, and Barnes responded that he did not know that he needed a light. At that point, Barnes began to make movements towards his front pockets. The officer testified, "He was making overt movements toward his pockets like he was trying to retrieve a weapon or I don't know, I was concerned for my safety at that time, Judge." The officer did not see a bulge in Barnes's pocket, nor was Barnes acting violent in any way.
Because of Barnes's movement toward his pockets, the officer patted Barnes down and asked him if he had any weapons. As the officer was patting Barnes *993 down, Barnes told the officer that he did not have any weapons, but that he did have "weed" in his pocket. The officer then reached into Barnes's pocket and retrieved the marijuana.
After the marijuana was discovered, the officer learned that there was an active arrest warrant for Barnes. The officer then arrested Barnes. Subsequent to the arrest, the officer located crack cocaine in Barnes's right front pocket.
The trial court granted the motion to suppress, finding that the officer conducted the pat-down search without sufficient legal cause to believe Barnes was armed or dangerous. The court found that Barnes's act of making movements towards his pockets was insufficient to justify a reasonable belief that he was armed with a dangerous weapon.
"[P]olice officers are authorized to execute a pat-down for weapons only where they have a reasonable suspicion to believe that a suspect is armed with a dangerous weapon." Campuzano v. State, 771 So.2d 1238, 1243 (Fla. 4th DCA 2000). "One of the recognized circumstances justifying a weapons pat-down is the combination of the defendant's nervousness and the officer's observation of a bulge in the defendant's clothing." Ray v. State, 849 So.2d 1222, 1225 (Fla. 4th DCA 2003). However, an officer does not have reasonable suspicion that a defendant is armed merely because, following a non-criminal traffic stop, the defendant appears nervous and keeps his hands in or near his pockets. Id.; see also Coleman v. State, 723 So.2d 387 (Fla. 2d DCA 1999); E.H. v. State, 593 So.2d 243 (Fla. 5th DCA 1991). "The mere thrusting of one's hand in one's pocket in front of a police officer does not constitute conduct which supports a founded suspicion that an individual is armed and dangerous." Delorenzo v. State, 921 So.2d 873, 879 (Fla. 4th DCA 2006) (Warner, J., concurring specially).
Although he appeared nervous and attempted to place his hands in his pockets as the officer approached, Barnes's actions were insufficient to give rise to a reasonable suspicion that he was armed. The officer did not observe a bulge in Barnes's pocket, nor did Barnes engage in any violent behavior that could give rise to a reasonable belief that a weapon might be present. Accordingly, the trial court properly concluded that the frisk was illegal.
However, not all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. State v. Frierson, 926 So.2d 1139, 1143 (Fla.2006) (citing Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Thus, the question here is whether the arrest warrant was an intervening circumstance sufficient to break the chain of illegality relative to the discovery of the contraband narcotics.
In Frierson, the defendant failed to use a turn signal in making a turn and was driving with a cracked, but functional, taillight. As a result, an officer initiated a stop of the defendant's vehicle. However, the stop was unlawful because the defendant's failure to use the turn signal did not affect other traffic, and an operational taillight that is cracked does not violate any traffic law. Upon being stopped by the officer, the defendant provided the officer with identification. The officer ran a check on the defendant, and learned that there was an outstanding warrant for the defendant's arrest. As a result of the outstanding warrant, the defendant was arrested. A search incident to the defendant's arrest revealed a firearm, which the defendant moved to suppress.
*994 The question before the Florida Supreme Court was "[w]hether evidence seized in a search incident to an arrest based upon an outstanding arrest warrant should be suppressed because of the illegality of the stop which led to the discovery of the outstanding arrest warrant." Id. at 1143. In holding that the evidence should not be suppressed, the Frierson court first noted the United States Supreme Court's holding in Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), that not all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the court must consider three factors in deciding whether unlawfully obtained evidence should be excluded: (1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. Frierson, 926 So.2d at 1143 (citing Brown v. Illinois, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and United States v. Green, 111 F.3d 515, 521 (7th Cir.1997)).
As to the first factor, our supreme court acknowledged that the brief time between the illegal stop and the arrest weighed against finding the search attenuated, but emphasized that the first factor "is not dispositive." Id. at 1144.
As to the second factor, the court found that the outstanding warrant was an intervening circumstance:
In turning to the next factor, the outstanding arrest warrant was an intervening circumstance that weighs in favor of the firearm found in a search incident to the outstanding arrest warrant being sufficiently distinguishable from the illegal stop to be purged of the "primary taint" of the illegal stop. Crucially, the search was incident to the outstanding warrant and not incident to the illegal stop. The outstanding arrest warrant was a judicial order directing the arrest of respondent whenever the respondent was located. . . . The illegality of the stop does not affect the continuing required enforcement of the court's order that respondent be arrested.
Id.
Finally, as to the flagrancy of the misconduct, the court noted that mistake in respect to the enforcement of the traffic law, but there was no evidence that the stop was pretextual or in bad faith. Id. at 1144-45.
Although the Frierson case applied the three-factor test from Brown in the context of evidence that was discovered following an illegal stop, logically the Frierson framework applies equally to an illegal frisk.
In the present case, the first factor weighs against finding that the discovery of the evidence against Barnes was "sufficiently attenuated to dissipate the taint" of the illegal pat-down. This was a brief traffic stop. In any event, as the supreme court noted, the first factor is not dispositive.
The second factorintervening circumstancesappears to be the most important. It is implicit from Brown and its progeny that there must be some intervening circumstance in order for the taint of a primary illegality to be dissipated. See Frierson, 926 So.2d at 1144 (intervening circumstances should be weighed against "the purpose and flagrancy of the official misconduct").
In the present case, the discovery of the marijuana and Barnes's statement occurred during the weapons pat-down, so the outstanding warrant cannot be an intervening circumstance. However, the outstanding warrant was an intervening *995 circumstance relative to the discovery of the crack cocaine. Here, the taint of the initial illegality dissipated with respect to the evidence found after the officer discovered the outstanding warrantin this case, the crack cocaine found subsequent to Barnes's formal arrest. The outstanding warrant broke the chain of illegality even if the officer may have had an independent reason to arrest the defendant based upon illegally obtained evidence. The illegality of the frisk did not affect the validity of the court order for Barnes's arrest.
The third factor in Frierson concerns the purpose and flagrancy of the official misconduct. There was nothing in the record suggesting that the illegal pat-down was flagrant misconduct. Nothing suggested that the pat-down was pretextual or done in bad faith. Instead, the pat-down was a result of the officer's mistake regarding his legal authority to frisk someone who moves his hands in or near his pockets during a stop under Florida Law. See Delorenzo v. State, 921 So.2d 873, 879 (Fla. 4th DCA 2006) (The mere thrusting of one's hand in one's pocket in front of a police officer does not constitute conduct which supports a founded suspicion that an individual is armed and dangerous.). However, in determining whether there is flagrant misconduct under this third factor, cases from other jurisdictions suggest that a suspect who appears nervous and jittery and who suddenly thrusts his hands toward his pockets, may cause a reasonably prudent officer to pat-down the person for officer safety. See, e.g., State v. Mann, 271 Conn. 300, 857 A.2d 329, 346 (2004) (a suspect's attempt to reach into his pocket or some other place where a weapon may be concealed is a fact that supports a reasonable suspicion that the suspect is armed and dangerous); United States v. Robinson, 119 F.3d 663, 667 (8th Cir.1997) (suspect took his hands off steering wheel and moved them toward his waist); United States v. Lane, 909 F.2d 895, 900 (6th Cir.1990) (defendant attempted to reach into his coat pocket); United States v. Landry, 903 F.2d 334, 337 (5th Cir.1990) (suspect observed reaching for bag); State v. Taylor, 966 So.2d 631, 640 (La.Ct.App.2007) (officer's safety concerns escalated when defendant attempted to reach for his pants pocket.) The foregoing cases are not cited to change or alter Florida law, but only because they are instructive and analogous on the issue of flagrant misconduct, and in determining whether the exclusionary sanction is appropriate.
We thus conclude that the trial court erred in suppressing the cocaine, insofar as the warrant was an intervening circumstance. Accordingly, we reverse with respect to the suppression of the cocaine, but affirm with respect to the suppression of the other evidence, and remand for further proceedings.
SHAHOOD, C.J., and STEVENSON, J., concur.
BELANGER, ROBERT E., Associate Judge, concurs specially.
BELANGER, ROBERT E., Associate Judge, concurring specially.
I concur in majority opinion but write to add the following. The United States Supreme Court has repeatedly held that the State's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution.[1] In United States v. Leon, 468 U.S. 897, 906, 104 S.Ct. *996 3405, 82 L.Ed.2d 677 (1984), the Supreme Court said, "Whether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is `an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" Illinois v. Gates, [462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)]. See also United States v. Calandra, 414 U.S. 338, 347-48, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); Shadler v. State, 761 So.2d 279, 284 (Fla.2000).
The substantial social costs exacted by the exclusionary rule for the vindication of Fourth Amendment rights have long been a source of concern. "Our cases have consistently recognized that unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury." United States v. Payner, 447 U.S. 727, 734, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980). "Indiscriminate application of the exclusionary rule, therefore, may well `generat[e] disrespect for the law and administration of justice.' Accordingly, `[a]s with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.'" State v. Campbell, 948 So.2d 725, 730 (Fla.2007) (citations omitted).
This view of the limits of the exclusionary rule was reiterated in the recent past term of the Supreme Court in Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 2163, 165 L.Ed.2d 56 (2006):
Suppression of evidence, however, has always been our last resort, not our first impulse. The exclusionary rule generates "substantial social costs," United States v. Leon, 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which sometimes include setting the guilty free and the dangerous at large. We have therefore been "cautio[us] against expanding" it, Colorado v. Connelly, 479 U.S. 157, 166, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), and "have repeatedly emphasized that the rule's `costly toll' upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application." Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 364-365, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (citation omitted). We have rejected "[i]ndiscriminate application" of the rule, Leon, supra, at 908 [104 S.Ct. 3405], and have held it to be applicable only "where its remedial objectives are thought most efficaciously served" United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)  that is, "where its deterrence benefits outweigh its substantial social costs,'" Scott, supra, at 363 [118 S.Ct. 2014] (quoting Leon, supra, at 907, 104 S.Ct. 3405.)
See also Campbell, 948 So.2d at 730-31 (Wells, J., dissenting, Cantero and Bell, JJ., concurring) (If the trial judge determines that there was a Fourth Amendment violation, he should then make a determination as to whether the exclusionary rule should exclude the evidence based on the Supreme Court's decision on the exclusionary rule.).
The foregoing decisions suggest that a ruling on a motion to suppress can be considered a two-stage proceeding. First, the court must determine whether a search or seizure is unlawful. If the search or seizure is found lawful, that is the end of the inquiry. However, if the search and seizure is determined to be unlawful, the court is permitted to make findings to determine the appropriate remedy. The exclusionary rule is not to be applied automatically and inexorably in every case. To be sure, in Terry v. Ohio, *997 392 U.S. 1, 13, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a stop and frisk case, the Supreme Court cautioned against, "a rigid and unthinking application of the exclusionary rule, in futile protest against practices which it can never be used effectively to control, [which] may exact a high toll in human injury and frustration of efforts to prevent crime. No judicial opinion can comprehend the protean variety of the street encounter, and we can only judge the facts of the case before us."
I agree with the results, reversing the suppression of the cocaine, while affirming the suppression of the other evidence. I write separately to note that Hudson v. Michigan seems to represent a significant evolution in the way the United States Supreme Court approaches the application of the exclusionary rule. While current law may not require the court to make findings on the remedy, trial courts should be permitted, if not encouraged, to avoid a rigid and unthinking application of the exclusionary rule, and to make findings on the application of the exclusionary rule as an appropriate remedy.
NOTES
[1] The Florida Constitution, Article I, Section 12, provides that search and seizure law in Florida "shall be construed in conformity with the 4th Amendment of the United States Constitution, as interpreted by the United States Supreme Court." (emphasis added).