MONACO, C.J.
The appellant, D.B.P., a minor, argues that the trial court erred in denying his motion to suppress evidence, and that his judgment and sentence should be reversed. Because we agree that under the prevailing case law the search lacked constitutional validity, we reverse.
The critical facts are uncomplicated. A sheriffs deputy sought to make a “consensual encounter” about mid-day near a bus stop in what the officer described as a “high crime” area. Other officers had advised the arresting officer that a person had committed pedestrian violations. The officer approached D.B.P. and said “Hey. What’s up man,” to which the minor responded, “Who me?” According to the officer, when he approached D.B.P., the minor put both hands in his pockets and looked nervous. The officer told him to take his hands out of his pockets, and when D.B.P. did not do so, the officer physically assisted the minor in removing his hands. D.B.P. was then told to place his hands above his head. The officer noted that the minor was wearing baggy pants, so the officer could not visually see what was in them. He then patted D.B.P. down and felt the handle of a handgun. The officer subsequently took D.B.P. into custody.
The State conceded in closing argument at the suppression hearing that the stop was an investigatory stop, and not a consensual encounter. The trial court agreed that the stop was “nonconsensual,” but then concluded that it was neither a consensual, nor an investigatory stop. Eventually the trial court opted to apply a Terry[1] analysis in determining whether the arresting officer had reasonable suspicion to search D.B.P. The trial court concluded that under the totality of circumstances, the actions of the officer were reasonable. After the court issued that ruling, D.B.P. pled nolo contendere, reserving the ruling on the search for appellate consideration. This appeal followed.
A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness *885 and a reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustain a trial court’s ruling. See Doorbal v. State, 837 So.2d 940, 952 (Fla.), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003); Pagan v. State, 830 So.2d 792 (Fla.2002), cert. denied, 539 U.S. 919, 123 S.Ct. 2278, 156 L.Ed.2d 137 (2003); San Martin v. State, 717 So.2d 462, 468 (Fla.1998), cert. denied, 526 U.S. 1071, 119 S.Ct. 1468, 143 L.Ed.2d 553 (1999); Davis v. State, 922 So.2d 438, 443 (Fla. 5th DCA 2006). While the standard of review to be applied to factual findings of the trial court is whether competent, substantial evidence supports the findings, the trial court’s application of the law to the facts is reviewed de novo. See Bevard v. State, 976 So.2d 1163 (Fla. 5th DCA 2008); Utu v. State, 929 So.2d 718 (Fla. 5th DCA 2006); Houston v. State, 925 So.2d 404 (Fla. 5th DCA), review denied, 935 So.2d 1220 (Fla.2006); Young v. State, 803 So.2d 880 (Fla. 5th DCA 2002); State v. Kindle, 782 So.2d 971 (Fla. 5th DCA 2001); McMaster v. State, 780 So.2d 1026, 1027 (Fla. 5th DCA 2001).
The Florida stop and frisk law, as interpreted by J.L. v. State, 727 So.2d 204 (Fla.1998), affirmed, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), and State v. Webb, 398 So.2d 820 (Fla.1981), allows an officer who has validly stopped an individual to pat down and search the person if the officer has reasonable suspicion to believe that the individual is armed with a dangerous weapon and poses a threat to the officer or any other person. § 901.151(5), Fla. Stat. (2009). In J.L., however, the Florida Supreme Court declined to create a firearm or weapons exception to the limitations on searches and seizures set out in the Fourth Amendment to the United States Constitution, and Article I, section 12 of the Florida Constitution. The court in discussing Terry stops and the use of informants noted that:
The law is well established that a police officer may, in appropriate circumstances, stop a person for the purpose of investigating possible criminal behavior, even though there is no probable cause for an arrest, as long as the officer has reasonable suspicion that the person is engaged in criminal activity, [cite omitted]. The circumstances may even require a frisk of the person to determine whether the person is carrying a weapon, if the police officer has a reasonable suspicion that the person is armed and poses a threat to the officer or others.
J.L., 727 So.2d at 206. In addition, howev-ei*, there must be something more to corroborate criminal activity than “easily obtained facts” such as clothing, appearance or location to support a search and seizure by officers. See Kalnas v. State, 862 So.2d 860, 862 (Fla. 4th DCA 2003) (officer required to uncover something more than just a verification of the innocent details of identification in order to establish the reliability of the anonymous tip); Butts v. State, 644 So.2d 605, 606 (Fla. 1st DCA 1994) (officers who are unable, to independently corroborate criminal activity may not initiate a gunpoint seizure based upon confirmation of innocent details such as appearance or clothing), review denied, 659 So.2d 272 (Fla.1995).
With this as our foundation we begin our consideration of the present case by noting that the stop in this case was not a Terry stop. There was no indication or suspicion that D.B.P. had committed or was about to commit a violation of the criminal laws of this state. E.H v. State, 593 So.2d 243 (Fla. 5th DCA 1991). D.B.P. was simply suspected of jaywalking, a traffic infraction. The specific issue before us, then, is whether D.B.P.’s act of putting his hands in his pockets during a stop for a noncrimi *886 nal infraction in a high crime area is sufficient to provide the requisite reasonable suspicion. The holdings of this court and of a number of our sister courts in cases similar to the present case in which a pat down was conducted in part because the searched person put his hands in or near his pockets, are instructive.
In State v. Banes, 979 So.2d 991, 993 (Fla. 4th DCA 2008), for example, the Fourth District Court affirmed a trial court’s granting of a motion to suppress where it found that the officer conducted a pat down search without sufficient legal cause to believe the defendant was armed or dangerous.
Police officers are authorized to execute a pat down for weapons only where they have a reasonable suspicion to believe that a suspect is armed with a dangerous weapon. Campuzano v. State, 771 So.2d 1238, 1243 (Fla. 4th DCA 2000). One of the recognized circumstances justifying a weapons pat down is a combination of the defendant’s nervousness and the officer’s observation of a bulge in the defendant’s clothing. Ray v. State, 849 So.2d 1222, 1225 (Fla. 4th DCA 2003). However, an officer does not have reasonable suspicion that a defendant is armed merely because, following a non-criminal traffic stop, the defendant appears nervous and keeps his hands in or near his pockets. Id.; see also Coleman v. State, 723 So.2d 387 (Fla. 2d DCA 1999); E.H. v. State, 593 So.2d 243 (Fla. 5th DCA 1991). The mere thrusting of one’s hand in one’s pocket in front of a police officer does not constitute conduct which supports a founded suspicion that an individual is armed and dangerous. Delorenzo v. Stale, 921 So.2d 873, 879 (Fla. 4th DCA 2006) (Warner, J., concurring specially). (Emphasis added).
Similarly in E.H. this court held that where a juvenile was stopped for a noncriminal traffic violation, the fact that the officer expressed concern that the juvenile kept reaching into his pocket was insufficient by itself to supply the reasonable suspicion necessary to support a pat down. Our court specifically noted that there was no testimony that the officer observed a bulge in the appellant’s clothing, or that the officer had any other objective indication that the juvenile was carrying a weapon in his pockets.
Likewise in Ray v. State, 849 So.2d 1222 (Fla. 4th DCA 2003), the defendant was stopped for riding his bicycle at night without proper lights by an officer patrolling an area known for illegal drug activity. Subsequently, based on Ray’s somewhat fidgety behavior, the deputy performed a weapons pat down and retrieved crack cocaine rocks from Ray’s pocket. The deputy testified that despite several requests, Ray would not remove his hands from his jacket pocket. In fact, Ray’s initial response to the deputy was, “Why are you bothering me?” According to the officer, Ray’s reluctance to remove and keep his hands away from his pockets coupled with the deputy’s knowledge of the location made him concerned for his safety.
Just as in the instant case, the officer in Ray expressly acknowledged that he did not observe any bulges or other evidence of the presence of a weapon in the defendant’s clothing. As to the location, in both cases there was nothing to link the defendants to any potential criminal activity. In Ray, the officer was simply going to discuss Ray’s failure to have the proper lighting on his bicycle. In the instant case, the officer ostensibly was going to question D.B.P. about his jaywalking. In addition, there was no elusive, unusual or suspicious behavior on the part of D.B.P. that would have justified the pat down. Compare *887 Copeland v. State, 756 So.2d 180 (Fla. 2d DCA 2000); see also Hoover v. State, 880 So.2d 710 (Fla. 5th DCA 2004).
Here, when the officer asked the defendant to take his hands out of his pockets, the request constituted a police order given the circumstances. See Dees v. State, 564 So.2d 1166 (Fla. 1st DCA 1990). The reason for the investigatory stop or non-consensual detainment was the officer’s concern about a pedestrian violation, specifically, the failure to use a pedestrian crosswalk. The infraction cited by the officer was noneriminal. Although the refusal by a person to remove his or her hands from pockets might well constitute part of the basis authorizing a pat down for weapons in some circumstances, under the well-established case law of this state, the facts presented here do not amount to the reasonable suspicion necessary to justify the search.
The Fourth Amendment protects citizens against unreasonable searches and seizures. It might be tempting to conclude that because the officer found a firearm when he searched D.B.P., the search was reasonable. The success of the search, however, is not now and never has been the test to be applied. Applying the established law to the facts of this case, it is clear that the search was not reasonable, and that the motion to suppress should have been granted. See § 901.151(6), Fla. Stat. (2009). Accordingly, we reverse the denial of the motion to suppress, and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.
GRIFFIN and EVANDER, JJ„ concur.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).