MORRIS, Judge.
Jason Keith Dawson appeals his judgments and sentences for armed trafficking in a controlled substance, felon in possession of a firearm, and obstructing or opposing an officer without violence. Dawson argues that his motion to suppress should have been granted because the officers did not have reasonable suspicion that he was armed with a dangerous weapon and that the officers’ pat-down search was therefore unlawful. We agree and reverse.
I. Facts
At approximately 11:00 p.m. on January 21, 2008, two Hillsborough County Sheriffs deputies were in an undercover vehicle conducting an aggressive control campaign in North Tampa. The officers testified this area was known for criminal activity. While patrolling the area, the officers spotted Dawson walking along Dale Mabry Highway. Dawson was walking along the fog line on the road, but he was stumbling. The officers decided to investigate so they parked their vehicle near Dawson and exited the vehicle at the same time. Both officers were wearing “battle dress uniforms.” One of the officers asked Dawson to come speak to the officers. At this point in time, Dawson appeared nervous.
The officers testified that while they were speaking with Dawson, Dawson repeatedly put his hands into his pants and jacket pockets, even after being instructed several times not to do so. Because Dawson was wearing baggy clothing, the officers could not observe any bulges. However, one of the officers testified that he believed that Dawson “could have contraband or a weapon” and on that basis, he conducted a pat-down of Dawson.
*421 As the deputy felt Dawson’s back pocket, he felt what he thought was a bag of pills, based in part on the fact that he saw a portion of a plastic bag sticking out of Dawson’s pants. Then, while patting down Dawson’s front pocket, the deputy felt what he believed was a gun. Dawson tried to put his hand into the same front pocket, and according to the officer, he and Dawson began to struggle. The deputy further testified that during that struggle, Dawson tried to hit the deputy with his fist. Dawson was able to break free and run about fifteen feet before the officers subdued him. The officers discovered ecstasy pills and a gun in Dawson’s pockets. After Miranda[1] warnings were administered, Dawson told the officers that he got the pills from a friend and that the gun was given to him by another friend for protection.
Dawson’s version of the events was different. Dawson testified that he was walking along Dale Mabry talking on his cell phone when a Ford Expedition pulled in front of him blocking his route of travel. He testified that the officers rolled the windows down and ordered him to stop. One of the officers asked for Dawson’s identification and began interrogating him. Dawson testified that he never put his hands in his pockets and never heard the officers tell him not to do so.
In his suppression motion, Dawson argued that a pat-down search may only be conducted if the officers have a reasonable belief that the person detained is armed with a dangerous weapon and that routine pat-down searches based on general officer safety concerns are not constitutionally permitted. The trial court denied the motion. Dawson then pleaded guilty to the charges while specifically reserving the right to appeal the denial. We are now asked to determine whether the facts of this case justified the pat-down search.
II. Analysis
In reviewing the trial court’s denial of Dawson’s suppression motion, we must “accord a presumption of correctness to the trial court’s determination of the historical facts, but must independently review mixed questions of law and fact that ultimately determine the constitutional issues arising in the context of the Fourth Amendment.” Moody v. State, 842 So.2d 754, 758 (Fla.2003). We therefore look to determine if competent, substantial evidence supports the factual findings, and we review de novo the trial court’s application of the law to the facts. See State v. Clark, 986 So.2d 625, 628 (Fla. 2d DCA 2008).
This case presents the issue of two conflicting interests: the Fourth Amendment right to be free from unreasonable searches and seizures and the ongoing concern for officer safety in an increasingly dangerous profession. But even though the facts of this case reveal an alarming result of the pat-down — a gun — we are not permitted to be distracted by the fruit of the search. Instead, our focus must be on the justification for the search. See D.B.P. v. State, 31 So.3d 883, 887 (Fla. 5th DCA 2010) (“The success of the search ... is not now and never has been the test to be applied.”).
In a case with similar facts, the Fourth District was asked to determine the issue now presented to us: whether the actions of the defendant in keeping his hands in his pockets provided reasonable suspicion that the defendant was armed with a weapon. See Ray v. State, 849 So.2d 1222 (Fla. 4th DCA 2003). In Ray, the appellant was stopped for riding his bicycle *422 ■without the proper lights. Id. at 1224. The area in which the stop occurred was known for illegal drug activity, and Ray was acting fidgety according to the officer who conducted the stop. Id. The officer also testified “that despite several requests, Ray did not want to remove his hands from his jacket pocket.” Id. Based on that fact, along with the officer’s “knowledge of the link between drugs and weapons,” the officer was concerned for his safety and conducted a pat-down search which resulted in the discovery of drugs. Id. The trial court denied Ray’s suppression motion on the basis that the facts “were sufficient to give the [officer] reasonable suspicion to believe Ray was armed.” Id.
On appeal, the Fourth District reversed. The court noted that one recognized circumstance justifying a weapons pat-down search is the “combination of the defendant’s nervousness and the officer’s observation of a bulge in the defendant’s clothing.” Id. at 1225. However, much like the facts of this case, the officer in Ray expressly testified he did not see any bulges in Ray’s clothing. Id. The court dismissed the officer’s testimony regarding a link between weapons and drugs because there was simply no evidence linking Ray to drugs or any other type of criminal activity. As a result, the court held that the fact that Ray was reluctant to remove his hands from his pockets — standing alone — was “insufficient to establish a reasonable suspicion that Ray was armed with a dangerous weapon.” Id.
The Fifth District has likewise held that a person’s reluctance to remove his hands from his pockets — without more — does not provide reasonable suspicion warranting a pat-down search. See D.B.P., 31 So.3d at 886.
And in Coleman v. State, 723 So.2d 387, 387 (Fla. 2d DCA 1999), we held that a pat-down search was improper where the only justification provided by the officer was the fact that the appellant “was acting nervous and holding his hand over his pants pocket.” Similar to this case, the officer in Coleman testified he did not see any weapons or notice any bulges in the appellant’s clothing that would indicate the appellant was carrying a weapon. Id.
For a weapons pat-down search to be valid, an officer must identify objective facts indicating that the person detained is armed and dangerous. See Howell v. State, 725 So.2d 429, 431 (Fla. 2d DCA 1999). But here, the only justification provided by the officers was the fact that Dawson refused to comply with their requests to keep his hands out of his pockets. That fact — standing alone — was insufficient to establish reasonable suspicion. The comment made by one officer that he believed Dawson “could have contraband or a weapon” was simply unsupported by any identifiable objective facts to lead him to that conclusion. Because “routine pat-down searches based on general concern for officer safety are not constitutionally permitted,” McNeil v. State, 995 So.2d 525, 526 (Fla. 2d DCA 2008), the officers lacked reasonable suspicion to conduct a pat-down search of Dawson and the trial court erred by denying the suppression motion.
III. Conclusion
We are cognizant of the enormous risk that law enforcement officers face each and every day, and we do not treat lightly the concerns for officer safety. However, such concerns cannot trump the Fourth Amendment protection from unreasonable searches and seizures unless officers can articulate a reasonable basis to believe that the person is armed. The facts of this case, even when viewed in the light most favorable to the State, do not meet that threshold requirement. Accord *423 ingly, we reverse the trial court’s denial of the motion to suppress.
NORTHCUTT and CRENSHAW, JJ., Concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).