NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


SHEDDRICK JUBREE BROWN, JR.,           )
                                       )
            Appellant,                 )
                                       )
v.                                     )        Case No. 2D15-3855
                                       )
STATE OF FLORIDA,                      )
                                       )
            Appellee.                  )
                                       )
_____    )

Opinion filed August 4, 2017.

Appeal from the Circuit Court for Lee
County; Margaret O. Steinbeck, Judge.

Howard L. Dimmig, II, Public Defender,
and Carol J.Y. Wilson, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Katherine Coombs Cline,
Assistant Attorney General, Tampa, for
Appellee.


BLACK, Judge.

        Sheddrick Brown, Jr., entered a negotiated plea to carrying a concealed

firearm, resisting a law enforcement officer with violence, battery on a law enforcement

officer, and resisting a law enforcement officer without violence.  He challenges the

denial of his motion to suppress, which the trial court ruled was dispositive only as to the carrying a concealed firearm charge. Because Brown was unlawfully detained and officers had no probable cause to believe that Brown was armed, we reverse the conviction for carrying a concealed firearm.

Testimony at the suppression hearing established that officers saw Otis Marchman, a known violent offender, outside of a house at 9th Street and Lemon Street around 5 p.m. Marchman was with another man, later identified as Brown. After being advised that Marchman had been seen at the house, two different officers drove by the house, slowed, and heard a man and a woman tell Marchman and Brown to leave the property. The officers then pulled into the driveway of the property to investigate "what could have been trespassing." By the time the officers were pulling into the driveway, Marchman and Brown had begun walking down the driveway, away from the house, toward the sidewalk and off the property. Less than a minute later a third officer arrived at the house.

Although Marchman was known to the officers, they did not recognize Brown. The officer who engaged Brown testified that Brown volunteered his identification and was very cooperative immediately. Once the officer saw Brown's identification, he recalled that Brown had been the victim of a shooting incident weeks prior. While the officer still held Brown's identification, Brown was looking over the officer's shoulder, not making eye contact, but both of Brown's hands were visible. At that point the officer decided that both men should be patted down for weapons. The officer testified that he did not see anything to make him think Brown was armed: "I

didn't see any bulge, I didn't see any, anything that overt, that would have led me to believe that he was armed. Just instincts . . . you just develop certain sixth senses."

The officer told Brown: "I'm just gonna pat you down for weapons. Go ahead and put your hands on your head and turn around. You're not under arrest. . . . I'm not detaining you." The officer testified that Brown did not respond to the request so the officer said again, "look, I need you to turn around, put your hands on your head." Brown slowly turned around, apparently attempting to stall complying with the officer's order. So the officer grabbed Brown's hands and told him to put his hands on top of his head, but "as soon as [the officer] grabbed his hands, and moved them to the top of his head, [Brown] took off and bolted away."

In his suppression motion, Brown alleged that officers had no basis upon which to detain him and that they lacked probable cause to pat him down for weapons. The trial court correctly summarized that the motion to suppress could have been granted on either of two bases: first, because the officers lacked reasonable suspicion that a crime had been committed in order to detain Brown or conduct an investigatory stop; or second, because the officers lacked probable cause to believe that Brown was armed with a weapon. In denying the motion, the court found both that Brown was legally detained based on the reasonable suspicion that he had committed a trespass and that officers had probable cause to suspect that Brown was armed. Given the evidence presented at the hearing, the trial court's rulings were incorrect on both bases.

In reviewing the denial of a motion to suppress, we defer to the trial court's factual findings provided that they are supported by competent substantial evidence; we review the application of the law to those facts de novo. Moore v. State, 200 So. 3d

1290, 1291-92 (Fla. 2d DCA 2016). Here, the factual findings of the court are not in dispute; the issues before this court are whether officers had reasonable suspicion to detain Brown and, if so, whether they also had probable cause to believe Brown was armed.

We are neither asked to nor do we make a determination as to whether the encounter at issue began as consensual. We note, however, that if—as the officer testified—Brown was not being detained, he was free to leave and could choose to comply with or ignore the officer's request. See State v. Albert, 193 So. 3d 7, 10 (Fla. 5th DCA 2016) (citing Popple v. State, 626 So. 2d 185, 186 (Fla. 1993)); Slydell v. State, 792 So. 2d 667, 673 (Fla. 4th DCA 2001). There appears to be no dispute that by the time the officer grabbed Brown's hands and Brown had twice been directed to turn around and put his hands on his head the encounter was not consensual but rather an investigatory stop. See Voorhees v. State, 699 So. 2d 602, 608 (Fla. 1997); see also Slydell, 792 So. 2d at 673 ("Without question, when the officers gave chase and subdued appellant, the encounter ceased being consensual and progressed to a stop or 'seizure.' " (quoting Terry v. Ohio, 392 U.S. 1, 16 (1968))). For such a stop to be lawful, reasonable suspicion justifying the detention must exist; that is, "the detaining officer[ ] must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." B.G. v. State, 213 So. 3d 1016, 1018 (Fla. 2d DCA 2017) (alteration in original) (quoting O.B. v. State, 36 So. 3d 784, 786 (Fla. 3d DCA 2010)). "Whether an officer's suspicion is reasonable is determined by the totality of the circumstances which existed at the time of the stop and is based solely on facts known

to the officer <u>before</u> the stop." <u>Id.</u> (quoting <u>A.T. v. State</u>, 93 So. 3d 1159, 1160 (Fla. 4th DCA 2012)).

In denying the motion to suppress, the trial court ruled that "[t]he initial detention of Brown was supported by reasonable suspicion that he had committed the crime of trespass, which does not require a prior warning by anyone." However, section 810.09, Florida Statutes (2015), clearly requires "notice against entering or remaining" to have previously been given. § 810.09(1)(a)(1), (2)(b); <u>see also</u> <u>Moore</u>, 200 So. 3d at 1292 ("[S]ection 810.09(1)(a) 'requires that notice be given before a person can be guilty of trespassing on property other than a structure or conveyance.' " (quoting <u>S.N.J. v. State</u>, 17 So. 3d 1258, 1259 (Fla. 2d DCA 2009)))); <u>D.T. v. State</u>, 87 So. 3d 1235, 1239 (Fla. 4th DCA 2012) ("To be guilty of trespass on property other than a structure or conveyance, appellant must have been given notice against entry."). Unless prior notice or warning against trespass has been given, an officer does not have the legal authority to arrest an individual for trespass. <u>Gestewitz v. State</u>, 34 So. 3d 832, 834 (Fla. 4th DCA 2010). Nor can an officer conduct an investigatory stop in the absence of specific, articulable facts supporting a reasonable suspicion that the individual has committed or is about to commit a crime, whether it be trespass or another crime. <u>See</u> <u>Musallam v. State</u>, 133 So. 3d 568, 569 (Fla. 2d DCA 2014).

There were no facts or circumstances supporting a reasonable suspicion that Brown had committed a trespass or any other crime. The officers testified that their purpose for stopping Brown and Marchman was to investigate trespassing. However, an individual's mere presence on the property—without more—does not give rise to a reasonable suspicion of trespass so as to justify a detention. <u>Collins v. State</u>, 115 So.

3d 1040, 1043-44 (Fla. 4th DCA 2013). And the facts established at the suppression hearing were that Brown and Marchman had been directed by the residents to leave the property and that they were complying with the directive; officers engaged them as they were walking away from the house and toward the street. Cf. § 810.09(2)(b) ("If the offender defies an order to leave, personally communicated to the offender by the owner of the premises or by an authorized person . . . the offender commits a misdemeanor of the first degree . . . ."); Rodriguez v. State, 29 So. 3d 310, 313 (Fla. 2d DCA 2009) (concluding that officer responding to call to have Rodriguez removed from residence had reasonable suspicion to believe that Rodriguez had already committed the offense of trespass because she had defied the residents' order to leave or had reentered the residence without authorization). The officers had no reasonable suspicion to detain Brown, and Brown's detention was therefore unlawful. See B.G., 213 So. 3d at 1018; see also Palmer v. State, 112 So. 3d 606, 608 (Fla. 4th DCA 2013) ("[B]ecause the officer did not recognize the defendant as someone who had previously been warned, he lacked legal authority to stop the defendant for trespass. Without reasonable suspicion, the State failed to prove the officers were engaged in the lawful execution of a legal duty when the defendant fled."). The trial court erred in denying the motion to suppress on the basis that the officers had reasonable suspicion that Brown had committed the crime of trespass.

Nonetheless, even had there been a founded, reasonable suspicion to detain Brown, that suspicion, in and of itself, would not have justified a pat-down search pursuant to section 901.151, Florida Statutes (2015). See McCloud v. State, 787 So. 2d 218, 219 (Fla. 2d DCA 2001). "A valid stop does not necessarily mean that there can

- 6 -

be a valid frisk." State v. Dickey, 203 So. 3d 958, 961 (Fla. 1st DCA 2016) (quoting State v. Webb, 398 So. 2d 820, 822 (Fla. 1981)). Pursuant to Terry, an officer may validly frisk or "conduct a pat down to find weapons that he reasonably believes or suspects are then in possession of the person whom he has stopped." Id. (quoting Webb, 398 So. 2d at 822). That is, "[f]or a weapons pat-down search to be valid, an officer must identify objective facts indicating that the person detained is armed and dangerous." Dawson v. State, 58 So. 3d 419, 422 (Fla. 2d DCA 2011) (emphasis added). Therefore, officers here needed reasonable suspicion that Brown was armed with a dangerous weapon in order to pat him down. See id.

The officer who attempted to pat down Brown testified: "I didn't see any bulge, I didn't see any, anything that overt, that would have led me to believe that he was armed. Just instincts . . . you just develop certain sixth senses." The officer later referred to his instincts as being right—Brown was armed. "But even though the facts of this case reveal an alarming result of the pat-down—a gun—we are not permitted to be distracted by the fruit of the search. Instead, our focus must be on the justification for the search." Dawson, 58 So. 3d at 421.

Contrary to the trial court's finding that it was "appropriate and lawful for law enforcement officers to consider the behavior of the defendant's companion, as well as the prior criminal record of the defendant's companion," the analysis does not change merely because Brown was with Marchman, a known violent offender. Association alone is insufficient to justify a pat-down search. See Ybarra v. Illinois, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that

person. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." (citation omitted)); cf. Maryland v. Pringle, 540 U.S. 366, 373 (2003) (distinguishing Ybarra and its conclusion "that the search warrant did not permit body searches of all of the tavern's patrons and that the police could not pat down the patrons for weapons, absent individualized suspicion" (emphasis added)).

In J.B. v. State, 679 So. 2d 1296, 1297 (Fla. 2d DCA 1996), this court concluded that the pat down of the defendant was improper where the only information officers had was that a suspect standing near the defendant had a significant amount of cocaine on his person and that when the officers approached the men, the defendant put his hands in his pockets and stepped back. Similarly, a passenger who is detained as the result of a lawful vehicle stop may not be patted down for weapons until and unless the officer reasonably suspects the passenger is armed and dangerous. Presley v. State, 204 So. 3d 84, 89 (Fla. 1st DCA 2016) (citing Arizona v. Johnson, 555 U.S. 323, 326-27 (2009)). And this is not a case where the officers were investigating a violent crime. Cf. State v. Hunter, 615 So. 2d 727, 732 (Fla. 5th DCA 1993) ("A reasonable suspicion of commission of a crime of violence, a robbery, in and of itself validates a patdown for weapons.").

Although we conclude that the trial court erred in applying the law with regard to when a defendant may be patted down for weapons, to the extent the trial

court found that a pat down would have been lawful independent of Brown's connection to Marchman, those findings are not supported by competent substantial evidence. There were no objective facts identified as providing a basis to conduct a pat-down search of Brown; there was simply no probable cause articulated.

We reverse the conviction and sentence for carrying a concealed firearm. We affirm the remaining convictions and sentences as no errors were preserved for review by this court.[1]  However, because the plea was negotiated as to all charges, we remand with instructions to allow Brown, if he chooses, to withdraw his plea on the remaining charges.  See Hicks v. State, 852 So. 2d 954, 961 (Fla. 5th DCA 2003).

Affirmed in part; reversed in part; remanded.


VILLANTI and SALARIO, JJ., Concur.

---

[1]The suppression motion was determined to be dispositive only as to the firearm charge, and Brown has not challenged that ruling.  We note that the motion did not seek dismissal of any of the other charges for which the validity of the stop may be a factor.