SILBERMAN, Judge.
A.F. appeals a juvenile probation order entered after the trial court found him guilty of giving a false name to a law enforcement officer pursuant to section *375 901.36(1), Florida Statutes (2004). Because the State failed to establish that A.F. had been arrested or was lawfully detained when he gave a false name to a law enforcement officer, we reverse.
At trial, Officer Paul Northrup testified that he was on patrol at Jackson Court Apartments on May 19, 2004. He was aware that the landlord of the apartment complex required tenants to sign a lease prohibiting them from loitering in the complex after dark. At 3:30 a.m., he observed A.F. straddling a silver scooter in the complex parking lot, talking to other individuals. A.F. remained there for about five minutes, then left the complex on the scooter. After A.F. left, Officer Northrup pulled him over for suspicion of trespass. The officer asked A.F. whether he was a resident, and A.F. said he was not. Officer Northrup then asked A.F. for his name, and A.F. identified himself as Don Roberts, which is not his actual name. Officer Northrup acknowledged that he did not have a basis to arrest A.F., but he stopped A.F. because of the following:
The time of the night. We had received information earlier about a silver scooter that was coming off the property. The subject did not live there. The defendant was on a silver scooter. The fact that other people were congregating. There was a lot of drug activity on the property. We had several robberies on the property. We act on that behalf [sic] and especially with the agreement, the lease agreement with the tenants, especially at 3:30 in the morning, it was my belief that the subject did not live there and did not belong on the property.
After the State rested its case, A.F. moved for a judgment of dismissal, arguing that the State had failed to establish that A.F. had been arrested or lawfully detained when he gave Officer Northrup a false name. The trial court denied the motion.
Section 901.36(1) provides that “[i]t is unlawful for a person who has been arrested or lawfully detained by a law enforcement officer to give a false name, or otherwise falsely identify himself or herself in any way, to the law enforcement officer or any county jail personnel.” Because it is undisputed that A.F. was not under arrest at the time he gave a false name, the question before us is whether the State established that he had been lawfully detained when he gave the false name. See id.; Cooks v. State, 901 So.2d 963, 964 (Fla. 2d DCA 2005).
The State argues that A.F. had been lawfully detained based upon Officer Northrup’s reasonable suspicion that A.F. was trespassing.[1] See Parsons v. State, 825 So.2d 406, 408 (Fla. 2d DCA 2002) (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for the proposition that an investigatory stop requires a “well-founded suspicion that the person has committed, is committing, or is about to commit a crime”). The trespass statute provides that a person commits a trespass on property when that person, “without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance ... [a]s to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation as described in s. *376 810.011.” § 810.09(l)(a)(l), Fla. Stat. (2004).
The facts related by Officer Northrup established that he stopped A.F. because it was 3:30 a.m., people were congregating, the area was known for drug transactions, robberies had occurred in the area, the lease prohibited loitering after dark, and the police had at some unspecified earlier time received information that a silver scooter was coming off the property and “[t]he subject did not live there.” However, before initiating the stop, Officer Northrup did not know A.F., did not know whether A.F. was a resident at the complex, and did not know whether A.F. had permission to be at the complex.
The State also did not establish whether the information about the silver scooter coming off the property was recent information or was in any way related to A.F. or someone else. Officer Northrup did not give a description of the individual who had earlier been seen on the scooter or state when the individual had been seen. Even assuming A.F. was the same individual who had been on the scooter that was the subject of the earlier report, the State did not present evidence establishing that he had not been authorized, licensed, or invited to enter or remain on the property. The State also did not establish that A.F. was on notice against entering or remaining on the property. See Satterfield v. State, 609 So.2d 157, 159 (Fla. 2d DCA 1992) (observing that officers did not have founded suspicion to detain defendant for a suspected trespass when there was no evidence that any “no trespassing” signs had been posted); In re B.M., 553 So.2d 714, 716 n. 2 (Fla. 4th DCA 1989) (noting that the “crime of trespass on unposted land does not occur until after the trespasser is warned to depart and fails to do so”).
While a given situation may reflect circumstances that authorize an officer to convey an order to depart the premises, see In re B.M., 553 So.2d at 715, here Officer Northrup did not initiate contact with A.F. until after he departed the property and Officer Northrup’s testimony did not establish a reasonable suspicion that A.F. was, in fact, not authorized to be at the apartment complex. Although Officer Northrup may have had a “hunch” that A.F. did not have the right to be at the complex, the evidence was insufficient to establish that Officer Northrup had a reasonable suspicion of criminal activity in order to detain A.F. See Parsons, 825 So.2d at 408 (noting that a “[bjare suspicion or a mere hunch is insufficient” to justify an investigatory stop).
Therefore, because the State failed to establish that A.F. gave a false name to a law enforcement officer while he was being lawfully detained, we reverse.
Reversed.
ALTENBERND and NORTHCUTT, JJ., Concur.

. The State does not suggest that Officer Northrup could have lawfully detained A.F. for suspicion of loitering, and the evidence does not reflect "circumstances that warrant a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity." § 856.021(1), Fla. Stat. (2004).