ALTENBERND, Judge.
 

 Stephanie Rodriguez appeals her judgments of conviction for trafficking in amphetamines, possession of alprazolam, and possession of drug paraphernalia,
 
 [1]
 
 which were entered after the denial of her dis-positive motion to suppress. The motion to suppress was based on the theory that an officer, as the agent of a lessee, illegally detained Ms. Rodriguez when he stopped her to issue a trespass warning for a nearby home. Following this illegal detention, Ms. Rodriguez claims she was illegally ar
 
 *311
 
 rested when she provided a false identity to the officer. Because the evidence was found in a search arising as a result of this arrest, she maintains that the evidence must be suppressed.
 

 The status of a police officer while stopping a person to issue a trespass warning is a surprisingly complex issue.
 
 See, e.g., J.M.C. v. State,
 
 962 So.2d 960 (Fla. 4th DCA 2007). As explained later in this opinion, because of the language in section 810.08(1), Florida Statutes (2006), we agree with the case law holding that a police officer conducts such a stop as an agent of the property owner. Accordingly, we conclude that a stop merely to issue a trespass warning is not a Terry
 
 [2]
 
 stop, but rather a consensual encounter. As a result, a citizen’s refusal to provide accurate identification during such an encounter would not be an arrestable offense. If this were the end of our analysis, we would be required to reverse the trial court and order the evidence suppressed.
 

 We conclude, however, that the police officer actually had a reasonable basis to believe that the lessees had already asked Ms. Rodriguez to leave them home and that she had already committed the offense of trespass outside his presence. Although the officer stopped Ms. Rodriguez to issue a formal trespass warning, this stop is equally justifiable as a
 
 Terry
 
 stop to investigate the earlier trespass that he had not witnessed. Although the misdemeanor had not occurred in his presence and he could not effect an immediate arrest of Ms. Rodriguez, we conclude that under these circumstances the officer did have authority to conduct a
 
 Terry
 
 stop pursuant to section 901.151, Florida Statutes (2006), to investigate the offense. When Ms. Rodriguez gave the officer an incorrect name and refused to provide her real name upon his urging, the officer was authorized to arrest her for opposing an officer without violence.
 
 [3]
 
 Because the relevant evidence was discovered in a search incident to that arrest, we affirm her judgments and convictions.
 

 I. The Facts
 

 On March 18, 2007, a Tampa police officer responded to a call from a couple who wished to have Ms. Rodriguez removed from their residence. The couple explained that they had allowed Ms. Rodriguez to spend the night at their home because she had no place to stay. In the morning, she accused them of stealing from her. An argument ensued and the couple decided to call the police when Ms. Rodriguez would not leave.
 

 When the officer arrived, the couple explained that Ms. Rodriguez had recently left on foot but that they were uncertain where she had gone. The officer checked the neighborhood but did not locate her. He returned to the residence, where the couple claimed that Ms. Rodriguez had actually not left the property but had hidden in a shed in the backyard. While the officer was gone, she had reentered the house and accosted them. The officer checked again in the neighborhood and saw a woman on the sidewalk a few houses down the street who matched her description.
 

 The officer approached Ms. Rodriguez and asked if she was “Stephanie.” She said that she was. At the suppression hearing, the officer explained that he be
 
 *312
 
 lieved she had committed the crime of trespass when she refused to leave the property at the request of the couple, but that he had not stopped her to arrest her; he merely intended to give her a trespass warning. In order to fill out the field report to document this stop and his warning to her, he asked for her full name and social security number. She gave a name and social security number; however, when the officer checked the information in his computer, it did not appear correct. The name Ms. Rodriguez gave was that of a person who lived in the neighborhood and who had recently called the police about an incident involving her baby. The officer asked a few additional questions. Ms. Rodriguez denied having a baby, but she continued to claim the accuracy of the identity she had provided. The officer then determined that the social security number belonged to a man. He told Ms. Rodriguez she was lying and eventually arrested her for obstructing his attempt to give a formal warning. Once he arrested her, she quickly gave her correct name. The officer then discovered an outstanding warrant for her arrest. Thereafter, during a search incident to the arrest, the drugs and paraphernalia were discovered on her person.
 

 Ms. Rodriguez filed a motion to suppress, arguing that the officer illegally detained and arrested her and that the drugs found incident to that unlawful arrest were inadmissible. The trial court denied the motion. Ms. Rodriguez now appeals the judgments and sentences entered after that denial.
 

 II. The Officer’s Authority as the Owner or Lessee’s Agent
 

 The statute governing trespass in a structure or conveyance states that:
 

 (1) Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance, or, having been authorized, licensed, or invited, is warned by the owner or lessee of the premises, or by a person authorized by the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance.
 

 § 810.08(1).
 
 [4]
 
 Accordingly, Ms. Rodriguez committed a trespass if she received a warning to leave the premises and refused to do so or entered the house without permission.
 

 Police officers typically issue the statutory warning to trespassers to depart the premises. Property owners and lessees give officers authority to issue such warnings in hopes that trespassers will either (1) comply with the officers’ requests to leave and actually depart the premises or (2) remain on the property, thereby authorizing the officers to arrest for a misdemeanor committed in their presence. Although this warning is often given by a police officer, section 810.08 provides that the owner, lessee, or a person authorized by an owner or lessee may give the warning. Thus, the case law explains that an officer provides a trespass warning, not in an official capacity, but as the property owner’s designee.
 
 See
 
 962 So.2d at 963 (Klein, J., concurring specially) (acknowledging that property owners often ask police officers to communicate trespassing warnings);
 
 see also In the Interest of B.M., 553
 
 So.2d 714, 715 (Fla. 4th DCA 1989) (finding that a police officer was an “authorized person” under the trespass statute able to order trespassers off property on behalf of property owner).
 

 Had the officer been acting merely as an owner’s or lessee’s designee, we are uncon
 
 *313
 
 vinced that he would have had the right to conduct a
 
 Terry
 
 stop or to receive proper identification from the alleged trespasser.
 
 See A.F. v. State,
 
 912 So.2d 374, 376 (Fla. 2d DCA 2005) (holding that the State could not prosecute the defendant for giving a false name to an officer because the officer did not have a well-founded suspicion to detain him for suspected trespassing);
 
 D.G. v. State,
 
 661 So.2d 75, 76 (Fla. 2d DCA 1995) (noting that a person does not have to tell officers his or her correct identity unless the person is legally detained). The failure to provide correct information about one’s identity in this context to an owner or lessee is not a crime, and we conclude that it does not constitute opposing an officer without violence.
 

 The facts in this case, however, clearly demonstrate that Ms. Rodriguez refused to leave the home at the couple’s request until the police arrived. Even after the police arrived, the couple, who were lessees, claimed that she remained on the property and reentered the home. Therefore, there is no question that the officer had reasonable suspicion, if not probable cause, to believe that Ms. Rodriguez had trespassed either by refusing to leave the premises after the lessees asked her to leave or by reentering the house without authorization.
 

 III. The Officer’s Authority to Conduct a
 
 Terry
 
 Stop for a Misdemean- or Occurring Outside His Presence.
 

 This misdemeanor occurred outside the presence of the officer. Although an officer can arrest a person without a warrant for certain types of misdemeanors where the legislature has authorized a warrant-less arrest based on probable cause,
 
 [5]
 
 this trespass falls within the general rule prohibiting such warrantless arrests.
 
 See
 
 § 901.15(1);
 
 see, e.g., Smith v. State,
 
 778 So.2d 329 (Fla. 2d DCA 2000) (holding that the police unlawfully arrested the defendant for trespassing because he did not commit the crime in the officers’ presence). We conclude that the officer’s inability to effect an immediate, warrantless arrest is not a basis to hold that the officer was prohibited under the Fourth Amendment from conducting an investigatory stop when he had well-founded suspicion that Ms. Rodriguez had committed this misdemeanor.
 

 Section 901.151(2) provides:
 

 (2) Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person’s presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.
 

 On its face, this statute makes no distinction between an investigatory stop for a misdemeanor and one for an offense for which a person can be arrested without a warrant based on probable cause.
 

 In this case, if Ms. Rodriguez had cooperated with the investigation, she would not have been arrested for trespassing at
 
 *314
 
 that time.
 
 [6]
 
 Nevertheless, the State could still have acted upon the investigation to charge her with a misdemeanor and could have obtained an arrest warrant for a subsequent arrest.
 
 See
 
 § 901.02(2). Nothing in our case law limits investigatory stops to situations in which the officer has a well-founded suspicion of an offense for which the officer could effect an immediate arrest. For example, in
 
 State v. Wise,
 
 603 So.2d 61 (Fla. 2d DCA 1992), this court permitted a
 
 Terry
 
 stop of a vehicle when a BOLO was issued on a citizen’s complaint that a person was trespassing on private property.
 

 We recognize that there is at least dicta in a special concurrence to a Florida case suggesting that a Terry stop for a completed misdemeanor is improper.
 
 See State v. Bennett,
 
 620 So.2d 635, 636 (Fla. 4th DCA 1988) (Glickstein, J., concurring) (“[S]tops to investigate suspects of past misdemeanors are not permissible.”). Moreover, there is case law in some other jurisdictions holding, under the facts in those cases, that an investigatory stop for a completed misdemeanor is improper.
 
 See, e.g., Gaddis v. Redford Twp.,
 
 364 F.3d 763, 771 n. 6 (6th Cir.2004) (observing that police may not stop individuals based on their reasonable suspicion of completed misdemeanors);
 
 Blaisdell v. Comm’r of Pub. Safety,
 
 375 N.W.2d 880, 883-84 (Minn.Ct.App.1985) (holding that
 
 Terry
 
 stops for past misdemeanors are impermissible).
 

 Other jurisdictions have declined to adopt any bright-line rule prohibiting such investigatory stops and permit them at least in cases that involve public safety.
 
 See United States v. Hughes,
 
 517 F.3d 1013, 1017 (8th Cir.2008) (holding that a stop for a completed trespass was not justified, even to identify perpetrators of a crime, absent a public safety threat);
 
 United States v. Grigg,
 
 498 F.3d 1070, 1080 (9th Cir.2007) (noting that the ongoing risk that an offending party might repeat a completed misdemeanor or that an officer might stem the potential for escalating violence increases the public safety interest associated with a suspected past violation);
 
 Bates v. Chesterfield County, Va.,
 
 216 F.3d 367, 371 (4th Cir.2000) (finding that a
 
 Terry
 
 stop was justified after a property owner reported that a juvenile trespassed on his property, acted strange when the owner attempted to speak with him, and then ran into the woods);
 
 State v. Amburgy,
 
 122 Ohio App.3d 277, 701 N.E.2d 728, 732 (1997) (holding that the victim’s assertion of trespass was not enough to stop the suspect absent a public safety threat);
 
 Hearod v. Bay Area Rapid Transit Dist.,
 
 2008 WL 5245886 (N.D.Ca. Dec. 17, 2008) (ruling that where the only exigency was ensuring that someone who had committed a minor nonviolent infraction was issued a citation was not sufficient to justify an intrusion on the plaintiffs Fourth Amendment interest in personal security). Even if we were to adopt a “public safety” limitation on
 
 Terry
 
 stops for completed misdemeanors, the stop in this case would be warranted.
 

 The U.S. Supreme Court has long avoided bright-line tests in Fourth Amendment analysis, preferring an approach that considers all the circumstances involved in each unique case.
 
 See Illinois v. Gates,
 
 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (rejecting a rigid two-pronged test for determining whether law enforcement officials have probable cause based on an informant’s tip in favor of a “totality-of-the-circumstances” approach). The facts in this case demonstrate that
 
 *315
 
 even a category such as “completed misdemeanor” can be elusive when events are ongoing. Perhaps there may be other factual circumstances in which it would be unreasonable to conduct a
 
 Terry
 
 stop to investigate a misdemeanor when the officer has a well-founded suspicion that it has occurred, but we conclude that the officer in this case was authorized to perform this stop. Accordingly, the trial court properly denied the motion to suppress, and we affirm the judgments and sentences on appeal.
 

 Affirmed.
 

 NORTHCUTT and LaROSE, JJ., Concur.
 

 [1]
 

 .
 
 See
 
 §§ 893.135(1 )(f)(l)(a), ,13(6)(a), .147, Fla. Slat. (2006).
 

 [2]
 

 .
 
 See Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 

 [3]
 

 .
 
 See
 
 § 901.36(1) (stating that "[i]t is unlawful for a person who has been arrested or lawfully detained ... to give a false name, or otherwise falsely identify himself or herself in any way”).
 

 [4]
 

 . In a similar manner, section 810.09(l)(a)(l) prohibits trespassing on property other than a structure or conveyance after notice has been given.
 

 [5]
 

 . For example, an officer can detain a shoplifter who is suspected only of petit theft based on probable cause.
 
 See
 
 § 812.015(3)(a), Fla. Slat. (2006). Similarly, an officer can arrest a person suspected of domestic violence, simple battery, or criminal mischief based on probable cause.
 
 See
 
 § 901.15(7), (9).
 

 [6]
 

 . Although Ms. Rodriguez would not have been arrested for trespassing, we note that she would have been arrested on unrelated charges because the officer would have discovered that she had an outstanding warrant for her arrest.