HAZOURI, J.
 

 Drew G. Gestewitz was charged with and convicted of possession of a controlled substance (Xanax) and escape. We reverse both convictions because those charges arose from conduct that took place after the police unlawfully detained Ges-tewitz for the purpose of issuing him a trespass warning.
 

 On the eve of the 2007 Super Bowl, Gestewitz attended Sharky’s Bar & Billiards in Sebastian, Florida. After an argument between Gestewitz and a bartender, the bartender called the police. Before the police arrived, Gestewitz had moved outside the bar and was standing by the bar’s front door.
 

 Three police officers initially responded. The officers approached Gestewitz and asked him to move away from the front door. The bar manager then asked the police to issue Gestewitz a trespass warning so that he could not re-enter the bar. While one officer went inside to fill out a written trespass warning, the two other officers detained Gestewitz outside the bar and spoke with him about the incident. During this detention, Gestewitz’s friend who was to give him a ride home arrived. As she approached, Gestewitz asked if he could leave. The police told him he was not free to leave because they were detaining him until they processed his trespass warning.
 

 Gestewitz then started putting his hands in his pockets. Although they did not notice a bulge in Gestewitz’s pockets, the officers asked Gestewitz if he had any weapons on him and ordered him to remove his hands from his pockets. Gestew-itz pulled his hands from his pockets and started voluntarily removing items from them.
 

 
 *834
 
 At this time, one of the officers noticed a clear plastic baggie poking out of Gestew-itz’s right pocket. The officer asked Ges-tewitz what was in the baggie. Gestewitz said it was a Xanax bar. Because Xanax is a controlled substance and Gestewitz did not have a prescription for it, the police placed Gestewitz under arrest. A few moments later, Gestewitz, whom the police had not yet handcuffed, tried to flee. About thirty feet into the chase, he tripped and fell and the police took him into custody. The State thereafter charged him with possession of a controlled substance (Xanax) and escape.
 

 Gestewitz filed a motion to suppress the Xanax discovered during his detention. The trial court denied this motion, at which time Gestewitz pleaded guilty to possession of Xanax and reserved his right to appeal the denial as a dispositive order. Gestewitz went to trial on the charge of escape, resulting in a conviction. We find the detention was illegal and that it resulted in Gestewitz’s arrest for possession of Xanax and escape. Therefore, we reverse Gestewitz’s convictions for possession and escape, and direct the State to discharge him.
 

 Our standard of review on a motion to suppress includes deference to the trial court to determine the credibility of witnesses and the weight of the evidence.
 
 See Wasko v. State,
 
 505 So.2d 1314, 1316 (Fla.1987) (“[A] reviewing court should not substitute its judgment for that of a trial court, but, rather, should defer to the trial court’s authority as a factfinder.”). Although we are required to accept the trial court’s determination of historical facts, “a defendant is entitled to a
 
 de novo
 
 review of whether the application of the historical facts to the law establishes an adequate basis for the trial court’s [determination],” i.e., whether the defendant’s Fourth Amendment rights have been violated.
 
 See Delorenzo v. State,
 
 921 So.2d 873, 876 (Fla. 4th DCA 2006).
 

 The sole basis for detaining Gestewitz was to give him a written warning stating that he could not re-enter the bar in question and, if he did re-enter, he would face arrest for trespass.
 

 A detention for the purpose of issuing a trespass warning on behalf of a private owner — absent other circumstances giving rise to a reasonable suspicion of other criminal activity — is a consensual encounter.
 
 See Slydell v. State,
 
 792 So.2d 667, 672-73 (Fla. 4th DCA 2001);
 
 see also Rodriguez v. State,
 
 29 So.3d 310 (Fla. 2d DCA 2009) (“Accordingly, we conclude that a stop merely to issue a trespass warning is not a
 
 Terry
 
 stop, but rather a consensual encounter.” (footnote omitted)). This is because a police officer — under the trespass statute — may issue a trespass warning for unauthorized entrance into a structure, but does not have the legal authority to conduct an investigatory stop or arrest for trespass unless the owner or his agent first warned the potential trespasser.
 
 See
 
 § 810.08(1), Fla. Stat. (2006);
 
 [1]
 

 S.N.J. v. State,
 
 17 So.3d 1258, 1259 (Fla. 2d DCA 2009) (stating that Florida’s criminal trespass statute “requires that notice be given before a person can be guilty of trespassing on property,” and that individuals “c[an] be legally detained for trespassing only if they were first warned to
 
 *835
 
 leave the property”);
 
 see also Rodriguez,
 
 29 So.3d at 310.
 

 Section 810.08(3), Florida Statutes (2006), which defines a “person authorized” to issue a trespass warning, authorizes a law enforcement officer, on behalf of a property owner, to warn a particular individual that he or she may not re-enter the structure or conveyance and doing so would constitute the criminal offense of trespass.
 
 [2]
 
 There is nothing in section 810.08(3) defining how an authorized person is to convey a trespass warning.
 

 In the instant case, the law enforcement officers could have chosen to give Gestewitz a verbal trespass warning and allowed him to leave when his friend arrived. If Gestewitz voluntarily decided to stay at the scene in order to receive a written trespass warning, that would have also been sufficient. However, the officers had no statutory or other lawful authority permitting them to detain Gestewitz for the purpose of issuing him a trespass warning. This is because, at the time the officers detained Gestewitz for warning purposes, there was no reasonable suspicion that Gestewitz committed the crime of trespass, as a trespass warning is a prerequisite to that crime.
 

 Given these circumstances, and the officers having no fear for officer safety or reasonable suspicion that Gestewitz had committed a crime or was about to commit a crime, the detention was unlawful.
 
 See State v. Barnes,
 
 979 So.2d 991, 993 (Fla. 4th DCA 2008);
 
 see also Delorenzo,
 
 921 So.2d at 878-79. Further compounding the illegality of the detention was one law enforcement officer’s order for Gestewitz to remove his hands from his pockets.
 
 See, e.g., Delorenzo,
 
 921 So.2d at 876 (“Ordering an individual to take his hand out of his pocket ordinarily turns a consensual encounter into a stop.”).
 

 Thus, the discovery of the Xanax bar was the product of an illegal detention, and the trial court should have granted the motion to suppress. It necessarily follows that because the discovery of the Xanax bar led to the arrest, which was unlawful, there could be no escape, as it stemmed from that unlawful arrest.
 
 Cf. State v. Frierson,
 
 926 So.2d 1139, 1143-45 (Fla.2006) (providing that, absent circumstances purging the taint of an illegal stop, evidence found during an illegal stop is “fruit of the poisonous tree” stemming from the illegal stop and should be suppressed (citing
 
 Wong Sun v. United States,
 
 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). We, accordingly, reverse the convictions for possession of the controlled substance Xanax and escape, and order Gestewitz to be discharged.
 

 Reversed.
 

 FARMER and DAMOORGIAN, JJ., concur.
 

 [1]
 

 . Section 810.08(1) states:
 

 Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance, or, having been authorized, licensed, or invited, is warned by the owner or lessee of the premises, or by a person authorized by the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance.
 

 [2]
 

 . Section 810.08(3), Florida Statutes (2006), states:
 

 As used in this section, the term "person authorized” means any owner or lessee, or his or her agent, or any law enforcement officer whose department has received written authorization from the owner or lessee, or his or her agent, to communicate an order to depart the property in the case of a threat to public safety or welfare.