[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11466
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cv-01648-PGB-DCI

BRYAN HENNING,

                                                        Plaintiff - Appellant,

versus

WALMART STORES INC. et al.,

                                                        Defendants,

D. CASEY,
Sargent, #550,
COUNTY OF BREVARD,

                                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 19, 2018)

Before WILLIAM PRYOR, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Bryan Henning was shopping at a Walmart in Brevard County, Florida, when two law enforcement officers informed him that the store manager had asked that he be issued a trespass warning. Despite the officers' instructions to leave, Henning attempted to remain in the store. After the officers escorted Henning outside, they detained him for approximately 15 minutes while they completed a written trespass warning.

Henning sued Brevard County and one of the officers who detained him, alleging that he was falsely imprisoned and that his detention violated his Fourth Amendment rights. He also alleged that Brevard County caused his illegal detention by adopting unconstitutional policies regarding trespass warnings and failing to train its officers on proper detention procedures.[1] The district court granted summary judgment to Brevard County and the officer, and Henning appealed. After careful review, we affirm.

## I.    BACKGROUND

### A.    Factual History

The Brevard County Sheriff's Department received a complaint about a man inside a McDonald's restaurant who had been photographing another customer

---

[1] Henning also sued two other defendants, but the claims against them have been resolved and therefore are irrelevant to this appeal.

without his permission.  Brevard County Sheriff's Deputy Aimee Slater was dispatched to the McDonald's to investigate.  When she arrived, she observed a white van matching the description of the man's vehicle parked outside the restaurant.  The van's rear windows were completely covered, and a divider separated the front driver and passenger seats from the rear of the van.

Slater knocked on the van's door, and a man came through the divider to the front of the van.  On Slater's request, the man exited the van and provided his driver's license, which identified him as Bryan Henning.  Henning denied taking any photographs while inside the McDonald's.  He explained that he was merely using his camera's viewfinder to look at photographs he had previously taken.  He also told Slater that he had been sleeping in his van a lot lately.

Observing a child's car seat containing a juice box and a McDonald's toy in the front passenger seat of Henning's van, Slater asked Henning whether he had a child with him.  He asked Slater why she wanted to know, and she explained that she wanted to make sure the child had a safe place to sleep.  Henning responded that he had two children, but they were not with him, nor had he seen them for a while.

Slater asked for Henning's consent to search his camera and van, but he declined.  She then told Henning that he needed permission from the restaurant to sleep in his van in the parking lot.  After learning from a McDonald's employee

3

that McDonald's does not permit anyone to park on its property overnight, Slater informed Henning that he could not sleep in his van in the parking lot.

As Slater was speaking with Henning, Brevard County Sheriff's Department Sergeant Dennis Casey arrived on the scene. Like Slater, Casey asked Henning for consent to search his camera and van. According to Henning, Casey explained that he wanted to search the van for "dead bodies."[2] Doc. 95 at 33.[3] Henning again withheld his consent, which, according to Henning, made Casey "extremely irate." *Id.* at 34. Slater and Casey then completed their investigation and told Henning that he was free to leave.

Henning left the McDonald's and traveled to a nearby Walmart. He noticed that a Brevard County Sheriff's Department vehicle was following him. When he arrived at the Walmart, Henning went inside to purchase supplies to fix a broken surfboard he had found. Meanwhile, Casey, Slater, and a few other law enforcement officers observed Henning's van in the Walmart parking lot. Casey saw signs indicating that Walmart did not permit overnight camping in its parking lot. Concerned that Henning planned to sleep in his van in the lot,[4] Casey again approached the van and knocked on the windows. When there was no answer,

---

[2] Because this is an appeal from a ruling on Casey's and Brevard County's motion for summary judgment, we present the facts in the light most favorable to Henning, the non-moving party. *See Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

[3] All citations in the form "Doc. #" refer to the district court docket entries.

[4] Henning testified that he did not intend to sleep overnight in his van in the Walmart parking lot and that he did not observe any signs prohibiting overnight camping.

4

Casey instructed Slater and another deputy, Michael Hoffman, to locate Henning inside the Walmart.

With the assistance of Walmart personnel, Slater and Hoffman located Henning in the aisle containing duct tape and rope. A Walmart employee told the officers that Henning had been in this aisle for an "extended time." Doc. 91 ¶ 18. Slater conveyed Henning's location to Casey, who then contacted the store manager to explain his and Slater's previous interaction with Henning at the McDonald's. The store manager told Casey that she wished for Henning to be given a trespass warning.

Slater and Hoffman approached Henning and informed him that the Walmart manager wanted him "trespassed" from the store. *Id.* ¶ 20. Slater instructed Henning to walk out of the store with her and Hoffman to complete paperwork, but, according to Slater, Henning stood in place and became argumentative. It was not until after Slater and Hoffman gave Henning several verbal commands that he began walking with them toward the front of the store. As they approached the front of the store, Henning again became argumentative and asked if he was being forced to leave. Slater and Hoffman continued toward the exit, but Henning stopped walking and became belligerent, using a "loud voice" and "foul language." *Id.* ¶ 21. Each of the deputies took hold of one of Henning's arms and led him out of the store.

5

Once outside, Slater and Hoffman escorted Henning to his van, where Casey and at least one other deputy were waiting. Henning asked whether he was being detained, and Casey responded that he was. The parties stipulated that Casey detained Henning for the purpose of writing a trespass warning. Henning provided the officers with his driver's license and other information they needed to complete the written trespass warning. One of the officers asked Henning to sign the trespass warning after it was completed, but he refused. The officers informed Henning that he would be arrested if he returned to the Walmart and advised him to leave the property. Henning estimated that 20 minutes elapsed between when Slater and Hoffman first approached him in the Walmart and when the officers told him he was free to go after completing the trespass warning. He estimated that his detention in the parking lot consisted of roughly 10 to 15 minutes of that time.

## B.    Procedural History

Henning, proceeding *pro se*, filed suit against Casey and Brevard County. He asserted claims against Casey for malicious prosecution, abuse of process, and illegal detention, all in violation of 42 U.S.C. § 1983, and for false imprisonment in violation of Florida law. As for Brevard County, Henning asserted a § 1983 claim for failure to train its officers regarding the constitutional limitations on detention.

Casey and Brevard County filed a motion to dismiss, and a magistrate judge recommended that the district court grant the motion. Henning raised no objection

to the dismissal of his claims against Casey for malicious prosecution and abuse of process, but he did object to the dismissal of his claims against Casey for illegal detention and false imprisonment and against Brevard County for failure to train.

The parties began discovery while the motion to dismiss was pending. Henning filed two motions to compel, asking the district court to order Casey and Brevard County to respond to certain interrogatories and requests for the production of documents. These motions remained pending on the day before the dispositive motions deadline, so Henning filed a motion to modify the scheduling order and extend the dispositive motions deadline until after he received a ruling on his motions to compel.

Casey and Brevard County then filed a motion for summary judgment on all of Henning's claims. In his response, Henning argued only that his ability to defend against summary judgment had been prejudiced by Casey's and Brevard County's refusal to respond to his discovery requests and that, as a result, the district court should defer ruling on the summary judgment motion until after it ruled on his motions to compel. Henning attached no evidence to his response.

The district court then entered an order ruling on the pending motions. First, because Henning raised no objection, the district court dismissed Henning's § 1983 claims against Casey for malicious prosecution and abuse of process. Second, the district court granted summary judgment against Henning on his remaining claims

7

for illegal detention, false imprisonment, and failure to train.  Finally, the district court denied Henning's request to defer ruling because, in the court's view, the information and documents that Henning had requested would not have impacted its analysis or conclusions regarding summary judgment.

Henning appealed.  He challenges the district court's grant of summary judgment on his claims for illegal detention, false imprisonment, and failure to train and its refusal to defer ruling on the motion for summary judgment until after it ruled on his motions to compel.

## II.    STANDARDS OF REVIEW

We review *de novo* summary judgment rulings, drawing all inferences and reviewing all evidence in the light most favorable to the non-moving party.  *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial."  *Moton*, 631 F.3d at 1341 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

We review the district court's discovery rulings for an abuse of discretion. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th

8

Cir. 2011).  We will not overturn discovery rulings "unless it is shown that they resulted in substantial harm to the appellant's case."  *Id.* at 1307 (alteration adopted) (internal quotation marks omitted).

## III.    DISCUSSION

### A.    Casey Is Entitled to Qualified Immunity on Henning's § 1983 Illegal Detention Claim.

Henning first appeals the district court's grant of summary judgment to Casey on Henning's § 1983 illegal detention claim.  The district court concluded that Henning's claim failed as a matter of law because Casey was entitled to qualified immunity.  We agree.

To prove a claim brought under § 1983, a plaintiff must show that he "was deprived of a federal right by a person acting under color of state law."  *Almand v. DeKalb Cty.*, 103 F.3d 1510, 1513 (11th Cir. 1997).  When defending against a § 1983 claim, however, a government official may assert the defense of qualified immunity, which "allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  A government official asserting this defense bears the initial burden of showing that "he was acting within his discretionary authority."  *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).  This requires showing that the government official's "actions were undertaken pursuant to the performance of his duties and within the scope of his

9

authority." *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (internal quotation marks omitted).

Assuming Henning has challenged whether Casey was acting within his discretionary authority when he detained Henning outside the Walmart to issue a written trespass warning, we have observed that law enforcement officers were performing their law enforcement duties within the scope of their authority when they informed an individual that he was no longer allowed to be on private property, escorted him off the property, and issued him a trespass warning. *See Zivojinovich v. Barner*, 525 F.3d 1059, 1071 (11th Cir. 2008) (explaining that the law enforcement officers "were lawfully executing their legal duty" by undertaking these actions). Based on *Barner*, we conclude that Casey was acting within his discretionary authority here.

Because Casey was acting within his discretionary authority, the burden shifts to Henning to show that Casey is not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). To do so, Henning must show that "(1) [Casey] violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). Henning argues that his detention violated his rights under the Fourth Amendment, but we disagree.

10

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend IV.  "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains [the person's] freedom of movement."  *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotation marks omitted).  Even a temporary detention for only a brief period of time constitutes a "seizure" within the meaning of the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809-10 (1996).  Typically, a Fourth Amendment seizure is "reasonable" only if based on probable cause to believe that the individual has committed a crime.  *Bailey v. United States*, 568 U.S. 186, 192 (2013).

Here, the parties agree that Casey's detention of Henning outside the Walmart was a "seizure" within the meaning of the Fourth Amendment.  The only issue, then, is whether the detention was reasonable because it was supported by probable cause to believe that Henning had committed a crime.  We conclude that it was.

Under Florida law, a person commits the crime of trespass when he violates a trespass warning:

> Whoever . . . having been authorized, licensed, or invited, is warned
> by the owner or lessee of the premises, or by a person authorized by

11

the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance.

Fla. Stat. § 810.08(1).  The issuance of a trespass warning as contemplated by this statute is "a consensual encounter," meaning that a law enforcement officer may only issue a verbal warning, or, "if the individual voluntarily decides to remain in order to receive a written warning," then the officer also may issue a written warning.  *Moore v. State*, 200 So. 3d 1290, 1292 (Fla. Dist. Ct. App. 2016).  Until the potential trespasser has received a warning, the law enforcement officer lacks the legal authority to conduct an investigatory stop or arrest for trespass.  *Gestewitz v. State*, 34 So. 3d 832, 834 (Fla. Dist. Ct. App. 2010).  If the potential trespasser receives a warning and remains on the property, however, then he becomes an actual trespasser under the plain language of the statute.  *See* Fla. Stat. § 810.08(1). Once a law enforcement officer has probable cause to believe that a trespass has occurred, she may detain the trespasser.  *See A.D. v. State*, 939 So. 2d 1126, 1128 (Fla. Dist. Ct. App. 2006) (holding that an arrest for trespass was proper when the defendant had received a trespass warning but nonetheless remained on the property).

Casey had probable cause to believe that Henning had committed trespass under Florida law.  Slater and Hoffman approached Henning inside the Walmart and informed him that the manager had requested that he be "trespassed" from the store.  Doc. 91 ¶ 20.  The officers then asked Henning to exit the store with them.

12

At that point, the officers had provided Henning with a trespass warning. Nonetheless, undisputed evidence shows that Henning was noncompliant and attempted to remain in the store. Slater stated in her affidavit that Henning "stood in place and became argumentative." *Id.* She also asserted that it took "several verbal commands" for Henning to begin walking with the officers to the front of the store. *Id.* According to Slater, as she and Hoffman attempted to exit the store with Henning, he "stopped walking and became argumentative again, advising that he did not have to listen to us." *Id.* ¶ 21. Slater stated that when Henning "became belligerent," and failed to comply with verbal commands to leave the store, the officers took hold of his arms and directed him through the exit.[5] *Id.*

Henning cites no evidence refuting Slater's account of his conduct inside the Walmart. In response to Casey's motion for summary judgment, Henning could have submitted an affidavit or declaration explaining that Slater's account was inaccurate, but he failed to do so; his only argument in opposition to summary judgment was that the district court should defer ruling until after it ruled on his motions to compel. True, Henning testified in general terms during his deposition that when Slater explained that the store manager wanted him "trespassed" and so

---

[5] Henning testified that he was "escorted" through the "whole store," but it is unclear whether he meant that the officers walked along with him or that they physically held onto him. Doc. 95 at 44. He testified that the officers "maybe" took hold of his arms, but did not indicate whether they did so as soon as they asked him to leave or only as they approached the front door. *Id.* Even if Henning's testimony created a dispute of fact as to the timing of his physical restraint inside the store, that dispute is immaterial because Henning's claim for illegal detention is not based on the officers' conduct inside the Walmart.

he had to come with her, "That's what [he] did." Doc. 95 at 42. And in response to defendant's counsel's question, "You just left with Deputy Slater?" Henning answered "[y]es." *Id.* at 43. But he never testified about his demeanor in doing so or denied that before leaving with the officers he attempted to remain in the store despite their commands. Given the specificity of Slater's testimony that Henning stopped walking, refused to exit the store, and had to be physically removed, Henning's deposition testimony that he left with the officers—which neither party disputes—was insufficient to create a genuine dispute of material fact regarding his conduct.

After they exited the Walmart, Slater and Hoffman escorted Henning to his van, where Casey and at least one other deputy were waiting to prepare the written trespass warning. Based on Slater's undisputed account of Henning's conduct inside the store, Casey had probable cause to believe that Henning had committed trespass under Florida law. *See* Fla. Stat. § 810.08(1). Casey's detention of Henning was not, therefore, a violation of Henning's Fourth Amendment rights. *See Bailey*, 568 U.S. at 192. Because Henning has failed to show that Casey violated his constitutional rights, the district court correctly concluded that Casey is entitled to qualified immunity on Henning's claim for illegal detention under § 1983.

**B.     Henning's Claim for False Imprisonment Under Florida Law Fails Because His Detention Was Lawful.**

Henning next argues that the district court erred in granting Casey summary judgment on his claim for false imprisonment.  Under Florida law, false imprisonment is defined as "'the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty.'"  *Escambia Cty. Sch. Bd. v. Bragg*, 680 So. 2d 571, 572 (Fla. Dist. Ct. App. 1996) (quoting *Johnson v. Weiner*, 19 So. 2d 699, 700 (Fla. 1944)).  To prove false imprisonment under Florida law, Henning must establish:  (1) the unlawful detention and deprivation of his person, (2) against his will, (3) without legal authority or "color of authority," and (4) that the detention was unreasonable and unwarranted under the circumstances.  *Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. Dist. Ct. App. 2015).  We agree with the district court that Henning cannot establish these elements.

As explained above, Casey's detention of Henning was supported by probable cause that Henning had committed the offense of trespass when he failed to heed Slater's trespass warning.  The existence of probable cause provided Casey with legal justification for detaining Henning.  *See Miller v. City of Jacksonville*, 603 So. 2d 1310, 1312 (Fla. Dist. Ct. App. 1992) ("Probable cause is an affirmative defense to a claim of . . . false imprisonment.")  As a result, Henning cannot show that his detention was "unlawful" or that Casey conducted it "without

15

legal authority." *Harder*, 174 So. 3d at 530.  Henning's false imprisonment claim

thus fails as a matter of law.[6]

## C.    Henning's Municipal Liability Claim Fails Because He Has Not Shown a Violation of His Constitutional Rights.

Henning also argues that the district court erred in granting summary

judgment to Brevard County on his claim that it violated § 1983 under a theory of

municipal liability.  To establish municipal liability under § 1983, a plaintiff must

show that:  (1) his constitutional rights were violated, (2) the municipality had a

custom or policy that constituted deliberate indifference to that constitutional right,

and (3) the policy or custom caused the violation.  *McDowell v. Brown*, 392 F.3d

1283, 1289 (11th Cir. 2004).  According to Henning, Brevard County violated

§ 1983 because his detention was caused by (1) its adoption of a policy or practice

of detaining people involuntarily in order to issue trespass warnings, and (2) its

failure to train its law enforcement officers on how to detain individuals without

violating their Fourth Amendment rights.

Like the district court, we conclude that Brevard County was entitled to

summary judgment on this claim.  As discussed above, Henning's detention

outside of the Walmart was supported by probable cause that he had committed the

---

[6] The district court held in the alternative that Casey was entitled to personal immunity on Henning's false imprisonment claim because Henning failed to show that Casey acted in bad faith or with malice.  But our conclusion that Henning cannot establish the elements of false imprisonment means that we need not review this alternative holding.

16

offense of trespass under Florida law. This means that his detention was reasonable and not in violation of his Fourth Amendment rights. *See Bailey*, 568 U.S. at 192 (explaining that Fourth Amendment seizures are reasonable if supported by probable cause to believe than the individual has committed a crime). Without evidence that his constitutional rights were violated, Henning's § 1983 municipal liability claim against Brevard County fails as a matter of law.

**D.    The District Court Did Not Abuse Its Discretion in Declining to Defer Ruling on Summary Judgment.**

Henning's final argument on appeal is that the district court abused its discretion in declining to defer ruling on Casey's and Brevard County's motion for summary judgment until after it ruled on Henning's pending motions to compel. In those motions, Henning asked the district court to order Casey and Brevard County to respond to a number of his interrogatories and requests for production of documents. The district court concluded that there was no need to rule on Henning's motions to compel before ruling on Casey's and Brevard County's motion for summary judgment because, even if the court compelled responses to Henning's discovery requests, those responses would not yield evidence that Henning's detention was in violation of his constitutional rights. We agree.

Many of Henning's discovery requests sought information unrelated to his claims. For example, Henning requested all documents relating to instances when Brevard County law enforcement officers ran his van's license plate number and

17

his driver's license number.  He also requested all documents relating to complaints received by Brevard County about a suspicious vehicle or white van. These requests could not have yielded any evidence relevant to Henning's claims, so Casey's and Brevard County's failure to respond to them did not prejudice Henning's ability to defend against summary judgment.

Henning's remaining discovery requests related only to his claim for municipal liability against Brevard County.  For example, Henning requested "all documents relating to Brevard County or its Sheriff's Department's policies, procedures, practices or training relating to the issuance of trespass warnings." Doc. 71 at 9.  He also asked for a description of "any policies or practices of either Brevard County or the Brevard County Sheriff that involve the use of trespass warning detentions as a pre-text for detentions."  Doc. 75 at 5.  If Henning had provided evidence that his Fourth Amendment rights were violated, then Brevard County's responses to these discovery requests could have provided evidence relevant to whether Brevard County caused and was liable for that violation.  But because Henning failed to show a constitutional violation in the first place, his municipal liability claim would have failed regardless of Brevard County's responses to his discovery requests.

In sum, none of the discovery requests identified in Henning's motions to compel could have yielded evidence that would have assisted him in defending

18

against summary judgment.  As a result, the district court did not abuse its discretion by declining to rule on those motions before granting summary judgment to Casey and Brevard County.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of defendants Casey and Brevard County.

**AFFIRMED.**